## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHEREE MCMANUS,

            Plaintiff,

    v.

JOHN F. KELLY, Secretary of Homeland
Security, and ROBERT J. FENTON, JR.,
Acting Administrator, Federal Emergency
Management Agency,[1]

          Defendants.

Civil Action No. 14-1977 (RDM)

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Sheree McManus, a black woman who was fifty-eight years old when she filed this case, has worked for Defendant Federal Emergency Management Agency ("FEMA") for more than a decade. Her frustrations with her employer began when FEMA did not select her to replace her outgoing supervisor, as that supervisor had recommended. Undeterred, she applied for multiple supervisory positions in 2008 and 2009, but was passed over for each one. She ultimately sought recourse through FEMA's Equal Employment Opportunity ("EEO") office, alleging that she did not receive the promotions because of her race or age. As that process unfolded, she applied for ten more promotions in 2010, but again watched as FEMA chose other, allegedly less-qualified candidates. She then amended her EEO complaint to allege that these additional non-selections were both discriminatory and the product of unlawful retaliation for her original EEO complaint.

---

[1] The current officeholders are automatically substituted as the defendants. *See* Fed. R. Civ. P. 25(d).

After the EEO office denied her relief, McManus brought the present suit in 2014. Dkt.

1. McManus alleges that her non-selection for the ten positions for which she applied in 2010

was the result of unlawful race and age discrimination under Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 633a, and in retaliation for her protected EEO activity. She also alleges

that FEMA retaliated against her by moving her to a less desirable office and by giving her a

"proficient" performance evaluation in 2012. *See* Dkt. 1 at 10–11 (Compl. ¶¶ 85–87).

Before the Court is FEMA's motion to dismiss and for summary judgment. *See* Dkt. 11.

FEMA asserts that it is entitled to summary judgment as to any claims that McManus

withdrew—and, accordingly, did not exhaust—in the course of the EEO administrative process.

In addition, FEMA argues that McManus's complaint does not plausibly allege that she was not

selected for promotion because of a protected characteristic or in retaliation for her earlier EEO

activity. Finally, FEMA contends that McManus's alleged office relocation and deflated

performance appraisal do not constitute adverse employment actions and, as such, do not give

rise to claims for retaliation under Title VII or the ADEA.

For the reasons explained below, the Court will grant in part and deny in part FEMA's

motion to dismiss and for summary judgment.

## I.  BACKGROUND

For purposes of the present motion, the Court construes the pleadings and evidence in the

light most favorable to McManus, who is the nonmoving party. *See Am. Nat'l Ins. Co. v. FDIC*,

642 F.3d 1137, 1139 (D.C. Cir. 2011); *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

McManus began working for FEMA as a "Grants Management Specialist" in 2003, Dkt.

1 at 2–3 (Compl. ¶¶ 8–9), bringing twelve years of federal government experience with her to the

job, including ten in grant management positions, *id.* at 3 (Compl ¶¶ 10, 13).  McManus's supervisor transferred to a new position in 2007 and recommended that McManus "act in her place" as the "Supervisory Grants Management Specialist."  *Id.* (Compl. ¶¶ 14–16).  McManus assumed the role for ten months during 2007–2008 and received a "superior" performance evaluation for her work in that capacity.  *Id.* (Compl. ¶¶ 17–18).  Following that interim period, her former supervisor recommended that FEMA promote McManus as her permanent successor, and McManus applied for that position.  *Id.* (Compl. ¶¶ 19–20).

FEMA filled the open supervisory position in September 2008 with two people—neither of them McManus.  *Id.* at 3–4 (Compl. ¶¶ 21–23).  One of the new supervisors was white, and both allegedly lacked policy experience.  *Id.* at 4 (Compl. ¶¶ 25–26).  Although FEMA's Deputy Administrator attested that she believed the two newly hired supervisors were more qualified than McManus—who, she believed, lacked sufficient policy experience—McManus's former supervisor disagreed, asserting that McManus "had exceptional policy experience."  *Id.* (Compl. ¶¶ 27–29).

Over the next two years, McManus repeatedly sought "promotion opportunities," "appl[ying] for seven different [positions] in 2008 [and] 2009."  *Id.* (Compl. ¶ 32).  On each occasion, she made the "best qualified list" and was interviewed for all seven positions, but she was not selected for any of the positions.  *Id.* at 4–5 (Compl. ¶¶ 32–34, 36).  On November 12, 2009, McManus contacted an EEO counselor about these non-selections, *id.* at 5 (Compl. ¶ 37); Dkt. 11-6 at 5, and she filed a formal complaint on February 8, 2010, which was partially accepted on April 22, 2010, Dkt. 11-2 at 1–3.  In May 2010, McManus applied for another ten vacancies, Dkt. 1 at 5 (Compl. ¶ 38); Dkt. 11-5 at 1, and, although she was certified as eligible for each of the ten positions, she was not interviewed or selected for any of them, Dkt. 1 at 5

(Compl. ¶¶ 39–41).  McManus asserts that all ten open positions required experience with both policy and grant management, and she alleges "that none of the selectees" "possessed as much policy experience" or "broad grants management experience" as she possessed.  *Id.* (Compl. ¶¶ 42–45).  McManus amended her EEO complaint in September 2010 to include claims that her failure to secure one of the ten open positions in 2010 was the product of race and age discrimination, as well as unlawful retaliation for her earlier EEO activity.[2]  *Id.* at 7 (Compl. ¶ 62); Dkt. 11-6 at 4, 7; Dkt. 11-5 at 1–2.

Beyond FEMA's refusal to promote her, McManus also alleges that the agency took other actions in retaliation for her EEO activity.  She asserts that an employee selected for one of the 2010 vacancies gave her a performance appraisal of "proficient" in September 2012, even though she had never before received a rating below "superior."  Dkt. 1 at 7 (Compl. ¶¶ 63–66). According to McManus, this employee did not possess "sufficient knowledge" or familiarity with her performance to render such an evaluation.  *Id.* at 8 (Compl. ¶¶ 67–68).  McManus also alleges that FEMA retaliated against her by forcing her to vacate her "private office on the fourth-floor," which she alleges was then given to "a contract employee."  *Id.* (Compl. ¶ 70). Although the complaint does not specify the location of McManus's new workspace, she asserts in her opposition brief that she was assigned "to a cubicle."  Dkt. 14 at 12.

---

[2]  McManus's complaint alleges that she amended her EEO complaint "[i]n *2011*" to "include claims of retaliation for . . . not being selected for any of the 2010 vacant positions."  Dkt. 1 at 7 (Compl. ¶ 62) (emphasis added).  The record submitted by FEMA, however, clarifies that she actually contacted the EEO office on September 29, *2010*, "seeking to amend her [c]omplaint to add allegations regarding her non[-]selection for" the ten 2010 positions.  Dkt. 11-6 at 7; Dkt. 11-5 at 1–2.  Furthermore, the record shows that the EEO office construed McManus's amendment as alleging race and age discrimination claims arising from her ten 2010 non-selections, as well as alleging retaliation claims arising from the same non-selections.  Dkt. 11-6 at 4.

In August 2014, an administrative law judge declined to sustain McManus's EEO claims, Dkt. 11-6, and she filed the present action several months later, alleging race and age discrimination and that she was denied the ten positions for which she applied in 2010, was moved from her office, and was given a less favorable performance review, all because of her protected EEO activity.  Dkt. 1.  FEMA initially moved to dismiss McManus's complaint, but at oral argument in April 2016, FEMA agreed that summary judgment—as opposed to a motion to dismiss—was the "most appropriate vehicle" to raise its exhaustion claims, Dkt. 15 at 8, and it thus withdrew its pending motion to dismiss, *id.* at 27.  In addition, counsel for McManus disclaimed that the complaint sought relief with respect to the seven non-selections in 2008–2009,[3] *id.* at 14, 22, and, with the consent of FEMA, McManus's counsel agreed to submit an amended complaint to address various pleading deficiencies noted by the Court at oral argument,[4] *id.* at 27.  After McManus failed to file an amended complaint by the agreed date, the Court ordered FEMA to "respond to [her] original complaint," Minute Order, June 3, 2016, and FEMA did so by filing the pending motion to dismiss and for summary judgment, Dkt. 11.

---

[3]  At the hearing, McManus's counsel "stipulate[d] that [McManus] c[ould not] get relief with respect to those seven claims," Dkt. 15 at 14, and later reiterated that McManus was "not seeking relief with respect to the seven original positions," *id.* at 22.  In her opposition to FEMA's currently pending motion, McManus further confirms that she "withdraws her claims to relief with respect to the seven 2008 vacancies," and to the extent her complaint could be read to challenge her non-selection for a "2009 position which [FEMA withdrew] before [she] could apply for it," she also withdrew any claim to relief "with respect" to that vacancy.  Dkt. 14 at 1.  Accordingly, the Court grants FEMA's motion for summary judgment as to any race or age discrimination claims arising from the 2008–2009 non-selections.

[4]  *See, e.g.*, Dkt. 15 at 23 (Court:  "[Y]ou agree that it might be helpful to have some greater detail with respect to the office move and the proficient evaluation?"  McManus's counsel:  "Exactly.").

## II.  STANDARD OF REVIEW

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)) (alterations in original) (internal citation omitted). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56 (quotation marks omitted).

The moving party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if it can "show[] that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When, as here, the plaintiff bears the ultimate burden of proof, but the defendant has moved for summary judgment, the defendant "bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986).  If the moving party carries that initial burden, the burden then shifts to the nonmoving party to show that sufficient evidence exists for a reasonable jury to find in the nonmoving

party's favor with respect to the "element[s] essential to that party's case, and on which that

party will bear the burden of proof at trial." *Id.* at 322. The nonmoving party's opposition,

accordingly, must consist of more than unsupported allegations or denials and must be supported

by affidavits, declarations, or other competent evidence, setting forth specific facts showing that

there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.

## III.  DISCUSSION

FEMA's motion raises three arguments. First, FEMA asserts that it is entitled to partial

summary judgment because, with respect to seven of the ten positions she sought in 2010,

McManus withdrew her discrimination claims in full or in part over the course of the EEO

process and, accordingly, failed to exhaust her administrative remedies. Dkt. 11 at 10–11. Next,

as to the discrimination claims that it acknowledges McManus properly exhausted, FEMA

argues that the complaint fails to allege any "factual matter" that would support a plausible

inference that she was not selected for promotion in 2010 because of her age or race. *Id.* at 12–

14. Finally, FEMA contends that McManus's retaliation claims fail as a matter of law because

she has not alleged "a causal link" between her EEO activity and her non-selections, *id.* at 14–

17, and because the alleged office move and "proficient" performance appraisal do not constitute

"adverse employment action," *id.* 17–18. The Court will consider each argument in turn.

### A.      Non-Exhausted Claims

FEMA argues that McManus failed to exhaust administrative remedies with respect to

several of her discrimination claims. Specifically, FEMA contends that, during the EEO process,

McManus affirmatively withdrew her claims that she was not selected for seven of the ten 2010

positions because of her race and her claims that she was not selected for three of the positions

because of her age. Dkt. 11 at 10–11.

"Exhausting administrative remedies is a prerequisite to filing suit under either the ADEA or Title VII." *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 172 (D.D.C. 2016). As relevant here, to exhaust administrative remedies under these statutes,[5] a federal employee must first "initiate contact" with an EEO counselor within forty-five days of the allegedly discriminatory conduct, 29 C.F.R. § 1614.105(a)(1), and must afford the agency an "opportunity to investigate the matter" internally, *Koch v. Walter*, 935 F. Supp. 2d 143, 149 (D.D.C. 2013). When an employee "withdraw[s] [an] allegation . . . at the administrative level," she "denie[s] [the agency] an opportunity to handle those allegations internally," and, accordingly, fails to exhaust her administrative remedies. *Pearsall v. Holder*, 610 F. Supp. 2d 87, 97–98 (D.D.C. 2009).

Here, the record on summary judgment establishes that McManus conceded in the course of the EEO investigation that she was not subject to race discrimination with respect to seven of her 2010 non-selections. Three of the non-selections arose out of a May 2010 job posting for "policy position[s]" that the record refers to as "Job B" or posting "AN343955." Dkt. 11-4 at 9; Dkt. 11-6 at 6. Although McManus's complaint now alleges that she was not selected for the three positions because of her age *and* race, *see* Dkt. 1 at 5, 10 (Compl. ¶¶ 38–43, 81–84), during an investigative deposition taken on October 19, 2012, McManus confirmed that she was "*not contending that*" she was passed over for the three positions connected to Job B "because of [her] race." Dkt. 11-3 at 1, 68–69 (McManus Dep. 1, 272–73) (emphasis added). Similarly, for four "[b]ranch [c]hief" positions arising from a different May 2010 job posting, which is referred to in the record as "Job C" or "AN343590," Dkt. 11-6 at 6; Dkt. 11-4 at 9, McManus testified during

---

[5] The Court notes that the ADEA offers plaintiffs one route to exhaustion that Title VII does not, but that difference is not at issue here. *See Achagzai*, 170 F. Supp. 3d at 172; *see* 29 U.S.C. § 633a(d).

that same deposition that she was "not contending" that her non-selection for those positions was "because of [her] race;" rather, as she explained, she was contending only that she was not selected "because of her age," Dkt. 11-3 at 75 (McManus Dep. 300).

The record also establishes that McManus conceded during her deposition that she was not subject to age discrimination with respect to one of her non-selections for the Job B positions, but it does not suggest that she did so for all three positions as FEMA contends. When asked if she was "contending that [she was non-selected for the three Job B positions] because of [her] age," McManus responded, "Yes[,] [b]ecause Nicole Day, Rosalie Vega, and Nicole Dubens"—presumably the three employees who were selected for the three positions—"are all under 40." Dkt. 11-3 at 69 (McManus Dep. 273). When asked why she thought "Ms. Day [had been] selected over [her] because of [her] age," however, McManus reversed course, explaining that, "Ms. Day[]—with that one, it is not age," but rather "technical ability and skills." *Id.* (McManus Dep. 273–74). McManus makes no such similar disclaimers about the two positions for which Vega and Dubens were selected, and FEMA points to no other evidence showing that McManus withdrew her age discrimination claims as to those two Job B positions.

McManus's opposition brief cursorily addresses FEMA's withdrawal argument, noting only that, under "EEOC Management Directive 110," "a charge of discrimination may not be withdrawn or changed . . . unless such withdrawal or change is in writing, and signed by the complainant." Dkt. 14 at 4. FEMA responds in an equally limited manner by asserting that Management Directive 110 is merely a "document issued by the EEOC to provide federal agencies with . . . guidance relating to the processing of employment discrimination complaints," Dkt. 16 at 3 (quoting *Dep't of the Air Force v. Fed. Labor Relations Auth.*, 316 F.3d 280, 282 (D.C. Cir. 2003)), and that it "does not define the concept of administrative exhaustion or restrict

the ability of [the Court] to find that a waiver has occurred," *id.*  Neither party, however,

provides the Court with the text of "EEOC Management Directive 110, Chapter 6, Section III-5,

as revised, August 5, 2015," Dkt. 14 at 4, and the Court could not readily locate the relevant

passage.  Furthermore, assuming that Management Directive 110 stands for the proposition that

McManus asserts, neither party has addressed the significance of the EEOC guidance document

beyond FEMA's tautological assertion that guidance is merely guidance.

Accordingly, based on the record and briefing currently before it, the Court cannot grant

FEMA's motion for summary judgment to the extent it asserts that McManus orally withdrew

certain of her claims.[6]

## B.      Discrimination Claims

Next, FEMA argues that McManus's discrimination claims fail because her complaint

does not "allege any factual matter to plausibly establish that Plaintiff was not selected for

promotion *because of* any protected characteristic." Dkt. 11 at 12.  McManus disagrees, stating

that the "facts speak for themselves" and that she has "established a prima facie case" of

discrimination "based on her protected class[es] of race" and age.  Dkt. 14 at 9.

At one time, "'I was turned down for a [promotion] because of my race [or age] [was] all

a complainant ha[d] to say' to survive a motion to dismiss under Rule 12(b)(6)." *Sparrow v.*

*United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000).  That permissive pleading standard

was premised, at least in part, on the Supreme Court's decision in *Conley v. Gibson*, 355 U.S. 41,

45–46 (1957), where the Court observed that a complaint should be dismissed for failure to state

---

[6]  Of course, to the extent McManus has conceded that her race and/or age did not play a role in her non-selection for certain positions, FEMA might reasonably seek summary judgment on that ground.  It has not done so, however, and the Court is unpersuaded that it can dismiss those claims for failure to exhaust based on the existing record and briefing.

a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim which would entitle h[er] to relief." In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), however, the Supreme Court "retired the *Conley* no-set-of-facts test," *id.* at 670. As a result, although the issue is not entirely settled, the Court is convinced that the *Sparrow* pleading standard is no longer controlling. *See, e.g.*, *Jackson v. Acedo*, 08-cv-1941, 2009 WL 2619446, at *4 (D.D.C. Aug. 26, 2009) (concluding that "*Sparrow* is no longer binding authority in light of" the Supreme Court's observations "in *Twombly*"); *Ali v. D.C. Gov't*, 697 F. Supp. 2d 88, 92 (D.D.C. 2010) (describing the "questions that [have] arise[n] about the continued validity of *Sparrow* in light of *Twombly* and *Iqbal*"); *Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 310 (D.D.C. 2015) (noting that "*Twombly* and *Iqbal* require more factual context" than the "multiple assumptions" necessary to state a claim under the *Sparrow* standard).

That does not mean, however, that the current pleading standard is an "onerous" one. *Nanko Shipping, USA v. Alcoa, Inc.*, No. 15-7070, 2017 WL 943947, at *4, --- F.3d --- (D.C. Cir. Mar. 10, 2017). It is not. For one thing, at "the motion to dismiss stage, the district court cannot throw out a [discrimination] complaint even if the plaintiff did not plead the elements of a prima facie case." *Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014) (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008)); *see also Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (D.C. Cir. 2015) ("[Plaintiff] need not plead facts showing each of [the prima facie] elements in order to defeat a motion under Rule 12(b)(6)."). And, for another, the complaint need not contain "detailed factual allegations," *Twombly*, 550 U.S. at 555, and it need not leave even a charitable reader with the sense that recovery is likely, *id.* at 556. Rather, the "only question before [the Court] is whether [the plaintiff has] alleged facts that, taken as true,

render h[er] claim of [discrimination] plausible." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015); *see also Iqbal*, 556 U.S. at 679 ("[A] complaint that states a plausible claim for relief survives a motion to dismiss.").

The Court concludes that McManus's complaint alleges "sufficient factual matter, [if] accepted as true," to state "'plausible'" claims for discrimination on the basis of race and age. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). McManus alleges, for example, that the positions for which she was not selected in 2010 "required policy experience" and "broad grants management experience," but that "[n]one of the selectees for the" positions "possessed as much policy experience" or broad "grants management experience" as she did. Dkt. 1 at 5 (Compl. ¶¶ 42–45). Indeed, McManus alleges, she "trained" "[m]any of the persons chosen over [her] . . . in grants management." *Id.* at 6 (Compl. ¶ 54). To this, she adds the allegations that she was "known throughout FEMA as the subject matter expert in FEMA grants management;" that she "wrote the FEMA Grants Management Handbook" ("known as the 'Bible'" within her department); that she "drafted numerous position papers and policy statements for FEMA executives and senior management;" and that she "drafted the [s]tandard [o]perating [p]rocedure [m]onitoring [p]olicy for the FEMA disaster relief programs for Hurricanes Katrina and Rita." *Id.* at 4–6 (Compl. ¶¶ 30–31, 46, 48, 50). Finally, McManus alleges that, as opposed to her near decade of experience at FEMA, "[s]everal of the persons chosen over [her] had only been in FEMA for a short period of time," and although she possessed "significant experience and expertise in disaster relief," "[n]one of the persons selected over [her]" had "any experience in disaster relief" whatsoever. Dkt. 1 at 2–3, 6 (Compl. ¶¶ 9, 53, 55–56).

These allegations, "[t]aken together . . . 'raise [McManus's] right to relief above the speculative level.'" *Brown*, 774 F.3d at 1023 (quoting *Twombly*, 550 U.S. at 555). At its core,

McManus's complaint alleges that, despite her superior qualifications, experience, and expertise, she was passed over for position after position in favor of employees with shorter tenures at the agency and far less relevant experience and that the only plausible explanation for FEMA's decisions is that the agency was discriminating against her on the basis of her race and age.  *See Martin v. District of Columbia*, 78 F. Supp. 3d 279, 293 (D.D.C. 2015) (quoting *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002) ("In the context of a failure to . . . promote, an inference of discrimination can be established by a plaintiff's elimination of 'the two most common legitimate reasons . . . to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.'")).

Although these allegations, standing alone, might not be sufficient to overcome an agency's proffer of a legitimate, non-discriminatory rationale at the summary judgment stage, they are sufficient to survive a motion to dismiss.  *See Greer*, 113 F. Supp. 3d at 310–11 (explaining that "substantial factual details" are not "necessary for an employment discrimination complaint to survive a motion to dismiss"); *see also Gordon*, 778 F.3d at 163 (describing the "critical difference between motions for dismissal and for summary judgment"). The type of detail "regarding comparators . . . and pretext" that FEMA argues is missing from McManus's complaint would "obviously strengthen [it]," but those "evidentiary requirements . . . are inapplicable at the pleading stage."[7]  *Nanko Shipping*, 2017 WL 943947, at *4.  Rather, at

---

[7]  To the extent FEMA asserts that McManus's complaint fails to state claims for discrimination because she does not "allege that the positions she applied for were given to individuals outside her protected class," Dkt. 11 at 13, the D.C. Circuit has foreclosed that argument.  *See Stella v. Mineta*, 284 F.3d 135, 139 (D.C. Cir. 2002) ("A plaintiff is not required to show that the person(s) hired in his/her stead belong to a different gender or race."); *see also Bennett v. District of Columbia*, 6 F. Supp. 3d 67, 75 (D.D.C. 2013) (describing as "well established" *Stella*'s holding that "a plaintiff in a discrimination case need not demonstrate that she was replaced by a person outside her protected class in order to carry her burden of establishing a prima facie case" and applying the holding to an ADEA claim (quotation marks omitted)).

this stage of the litigation, McManus need only "nudge[] [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  She has done so.

Accordingly, the Court will deny FEMA's motion to dismiss McManus's race and age discrimination claims arising from her 2010 non-selections.

## C.    Retaliation Claims

FEMA also argues that McManus's complaint fails to state a claim for retaliation.  *See* Dkt. 11 at 14–18.  Title VII and the ADEA prohibit an employer from "discriminat[ing] against any of [its] employees . . . because [s]he has made a charge . . . or participated in any manner in an investigation" of discrimination.  42 U.S.C. § 2000e–3(a) (Title VII); *Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008) (ADEA); *see also Jones v. Bernanke*, 557 F.3d 670, 680 (D.C. Cir. 2009) ("Title VII and the ADEA protect employees who engage in . . . protected activity.").  "To prove unlawful retaliation, a plaintiff must show: (1) that [s]he opposed a practice made unlawful by Title VII [or the ADEA]; (2) that the employer took a materially adverse action against h[er]; and (3) that the employer took the action because the employee opposed the practice." *Harris*, 791 F.3d at 68 (quoting *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012)) (applying the test in a Title VII case); *see also Passer v. Am. Chem. Soc.*, 935 F.2d 322, 331 (D.C. Cir. 1991) (applying the test in an ADEA case).  A complaint will survive a motion to dismiss if it "allege[s] sufficient facts on each of the . . . elements of a retaliation claim." *Harris*, 791 F.3d at 69.

As noted above, McManus alleges that, after she initiated an EEO action in November of 2009 regarding her seven non-selections in 2008–2009, FEMA retaliated against her by not selecting her for ten promotion positions in May of 2010, by rating her performance "proficient" rather than "superior" in November of 2012, and by moving her to a different office. *See supra*

p.4.  FEMA does not contest that McManus's EEO activity was protected, but it argues: (1) that

issuing her a "proficient" rating and changing her office assignment do not constitute "adverse

actions,"[8] Dkt. 11 at 17–18; and (2) that McManus's complaint fails to allege "any facts that

could suggest a causal link between her . . . protected activity and the alleged adverse actions,"

*id.* at 14–16.

    1.  *Adverse Actions*

      a.  <u>Performance Evaluation</u>

    FEMA contends that McManus's 2012 "proficient" performance appraisal cannot form

the basis of a retaliation claim because an unfavorable evaluation, standing alone, is not an

adverse action for purposes of the anti-retaliation provisions of Title VII and the ADEA.  *See*

Dkt. 11 at 18.  In the context of a retaliation claim, "[a] materially adverse action is one that

'could well dissuade a reasonable worker from making or supporting a charge of

discrimination.'"  *Taylor*, 571 F.3d at 1320 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*,

548 U.S. 53, 57 (2006)).  Accordingly, as the D.C. Circuit has recognized, "performance reviews

typically constitute adverse actions only when attached to financial harms," such as evaluations

that "could affect [the employee's] position, grade level, salary, or promotion opportunities."

*Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008); *see also Taylor*, 571 F.3d at 1321.

    As currently pled, the Court agrees that McManus's complaint fails to allege sufficient

facts to raise a plausible inference that her "proficient" performance appraisal constitutes an

adverse action.  McManus's complaint alleges only that McManus "had never [before] received

a performance appraisal of less than '[s]uperior' during her work history at FEMA" and that this

---

[8]  Understandably, FEMA does not dispute that "a refusal to promote is a materially adverse
action."  *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009).

"false performance appraisal was an act of retaliation." Dkt. 1 at 7–8 (Compl. ¶¶ 63–69). It does

not allege that she was denied a monetary award or bonus as a result of the "proficient" rating,

that she was not promoted (or that her prospects of future promotion were potentially

diminished) because of the rating, or that she experienced any alteration in position, grade level,

or salary as a result of the rating. In a declaration attached to her opposition to FEMA's motion

to dismiss, McManus avers that her past "superior" ratings had been accompanied by "up to

$1,500 in cash awards" as well as "other work related awards" and that, "[a]s a result of" being

rated "as merely 'proficient,' [she] did not get a performance award in 2012.'" Dkt. 14-2 at 4.

But it is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion

to dismiss," *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S Postal Serv.*, 297 F. Supp. 2d 165,

170 (D.D.C. 2003), and McManus's complaint, as currently drafted, does not include any of

those allegations or any other allegation that "state[s] a claim to relief that is plausible on its

face," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Accordingly, the Court will grant FEMA's motion to dismiss with respect to this

retaliation claim. Should McManus wish to amend her complaint to incorporate the allegations

made for the first time in her opposition brief, the Court will grant her leave to do so.[9]

b. Office Move

FEMA further argues that McManus's allegation that she was "ordered . . . out of her

private office on the fourth floor" fails to state a claim for retaliation because, FEMA asserts,

being forced to change offices does not constitute an adverse action. Dkt. 1 at 8 (Compl. ¶ 70);

---

[9] The Court notes that McManus's complaint includes general allegations of damages against
FEMA, including "substantial loss of present and future income" and injury to her "career and
professional reputation." Dkt. 1 at 9 (Compl. ¶¶ 79–80). To the extent that any of these
damages are related to her "proficient" performance evaluation rating, she may allege as much in
her amended complaint.

Dkt. 11 at 18.  But FEMA also moves for summary judgment on this claim, *see* Dkt. 11 at 17 n.4, explaining that, because the office "move occurred *prior* to the initiation of [McManus's] EEO activity," FEMA could not have asked McManus to relocate in retaliation for actions she had not yet taken, *id.* at 16 (emphasis added).  The undisputed record bears out FEMA's argument. James Driver, McManus's "[u]nion [r]epresentative," explained in a 2011 affidavit that McManus "contacted [him] . . . in regards to her being relocated from an office to a cubicle . . . in May/June 2009."  Dkt. 11-7 at 1.  McManus "first contacted an EEO counselor" about her 2008–2009 non-selections, however, "on November 12, 2009"—several months after the office relocation.  Dkt. 11-6 at 5.  McManus does not explain, or even address, this discrepancy in her opposition brief, nor does she dispute FEMA's timeline.

Because the undisputed record demonstrates that McManus was not required to change offices prior to her initiation of EEO activity, the Court agrees with FEMA that the office move could not have been required in retaliation for protected activity that had not yet occurred.  The Court will, accordingly, grant summary judgment to FEMA with respect to this portion of her retaliation claim.

2.  *Causal Connection*

FEMA also argues that McManus "has failed to establish how" her "non-selection for ten openings in 2010" is "causally linked to her protected activity."  Dkt. 11 at 15.  FEMA argues, for example, that McManus's complaint fails to "identify the selecting official for the 2010 non-selections . . . much less [allege] that such [an] individual[] knew of her protected activity."  *Id.* McManus disagrees, arguing that, "at the pleading stage, the elements of causation are unnecessary" and that, "even if . . . [she] was required to plead a causal link between her protected EEO activity and the adverse action, [she] has done so."  Dkt. 14 at 11.

17

The Court concludes that McManus has "alleged facts that, taken as true, render h[er] claim[s] of retaliation plausible." *Harris*, 791 F.3d at 70. First, it is an "established principle that temporal proximity between protected EEO activity and [an] adverse action can support an inference of causation when the two events are 'very close' in time." *Jones*, 557 F.3d at 677 (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)); *see also Clendenny v. The Architect of the Capitol*, 14-cv-115, 2017 WL 627367, at *8 (D.D.C. Feb. 15, 2017) ("As the D.C. Circuit has recognized, '[t]he temporal proximity of an adverse action close on the heels of protected activity is a common and highly probative type of circumstantial evidence of retaliation.'" (quoting *Allen v. Johnson*, 797 F.3d 34, 40 (D.C. Cir. 2015)). McManus has met this standard. Her complaint alleges that she "began the EEO complaint process" in 2009, and that "[s]ubsequent to . . . filing her EEO complaint, and *while her complaint was still being processed*, she applied" and was not selected for the ten 2010 vacancies. Dkt. 1 at 5 (Compl. ¶¶ 37–38) (emphasis added); *see Singletary v. District of Columbia*, 351 F.3d 519, 524–25 (D.C. Cir. 2003) (explaining that the district court must consider both initial protected activity and protected activity undertaken at later stages of the EEO administrative process). "Considering the minimal burden imposed at the prima facie stage," *Hamilton v. Geithner*, 666 F.3d 1344, 1358 (D.C. Cir. 2012) (quotation marks omitted), and cognizant that it must "draw all inferences in [McManus's] favor," *Brown*, 774 F.3d at 1020 (quoting *Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997)), the Court will construe the complaint to allege that McManus was actively engaged in pursuing her administrative EEO claim at, or shortly before, the time she was

not selected for promotion.[10]   On that basis, the Court concludes that McManus has alleged sufficient facts to satisfy the causation element.

Even putting this temporal proximity aside, the complaint offers a "plausible" basis to infer that FEMA retaliated against her for engaging in protected activity.  As McManus stresses, before she filed an EEO complaint, she was at least interviewed for each of the positions for which she applied in 2008–2009.  Dkt. 1 at 5 (Compl. ¶ 34).  Yet, after she filed her EEO complaint, she was not interviewed for a single one of the ten positions for which she applied in 2010.  *Id.* (Compl. ¶ 41).  Although she was unsuccessful in both her 2008–2009 and 2010 efforts, the difference in the level of the agency's apparent interest is sufficiently stark to support an inference of retaliation, at least at the pleading stage.

Finally, FEMA argues that McManus's retaliation claims fail as a matter of law because her complaint does not affirmatively allege that the deciding officials were aware that she had engaged in protected activity.  That contention, however, finds no support in the governing law.  To the contrary, even at the summary judgment stage, a plaintiff asserting a retaliation claim "needn't provide direct evidence that h[er] supervisors knew of h[er] protected activity."  *Jones*, 557 F.3d at 679.  Rather, she "need only offer circumstantial evidence that could reasonably

---

[10]   Although the sufficiency of the complaint must, of course, stand or fall based on its allegations and not based on unalleged facts, the Court notes that the material FEMA submitted in support of its motion for summary judgment shows that McManus "first contacted an EEO counselor on November 12, 2009," Dkt. 11-6 at 5; that she filed a "formal complaint [on] February 8, 2010," Dkt. 11-2 at 1; that the EEO office accepted her claims in part on April 22, 2010, *id.* at 1–2; that FEMA announced the ten positions for which McManus was not selected in May of 2010, Dkt. 11-6 at 5–7; and that McManus applied for those positions in the same month, *see, e.g.*, Dkt. 11-3 at 59, 70 (McManus Dep. 233, 278).  Accordingly, there was just a few weeks between when FEMA's EEO office formally accepted her allegations for investigation and when McManus applied for the ten 2010 positions that form the crux of her retaliation claims.

support an inference that they did." *Id.*  Certainly, no more is required at the motion to dismiss stage; all that is required is that the plaintiff allege sufficient facts to "raise a right to relief above the speculative level," *Brown*, 774 F.3d at 1020 (quoting *Twombly*, 550 U.S. at 555).  McManus has met that modest burden.

The Court will, accordingly, deny FEMA's motion to dismiss her retaliation claims arising from her ten 2010 non-selections.

### IV.  CONCLUSION

For the reasons discussed above, FEMA's partial motion for summary judgment is **GRANTED** in part and **DENIED** in part, and its motion to dismiss is **GRANTED** in part and **DENIED** in part.  McManus may file an amended complaint consistent with this opinion on or before April 28, 2017.

**SO ORDERED**.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  March 31, 2017