# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SHEREE MCMANUS, *Plaintiff*, v. KIRSTJEN NIELSEN, *Secretary of Homeland Security*,[1] *Defendant*. | Civil Action No. 14-1977 (RDM) |

## MEMORANDUM OPINION

The matter is before this Court on Defendant's renewed motion to dismiss and for summary judgment. Dkt. 33. Plaintiff Sheree McManus, an African American woman who was fifty-eight years old when she filed this case, alleges that her employer, the Federal Emergency Management Agency ("FEMA"), unlawfully discriminated against her on the basis of her age and race, and retaliated against her for engaging in protected Equal Employment Opportunity ("EEO") activity, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). Previously, the Court granted in part and denied in part Defendant's motion to dismiss and for summary judgment. *McManus v. Kelly*, 246 F. Supp. 3d 103, 106 (D.D.C. 2017) ("*McManus I*"). For the reasons explained below, the Court will **GRANT** Defendant's renewed motion.

---

[1] The current officeholder is automatically substituted as the defendant. *See* Fed. R. Civ. P. 25(d).

# I. BACKGROUND

A. **Factual Background**

The background of this case is detailed in the Court's previous opinion. *See id.* at 107–08. Because McManus has failed to oppose Defendant's renewed motion to dismiss and for summary judgment, Dkt. 33, despite thrice being ordered by the Court to file an opposition,[2] the Court will accept as true the facts set forth in Defendant's Statement of Undisputed Material Facts ("SUMF"), Dkt. 33 at 3–7, to the extent that those facts are supported by declarations, deposition transcripts, or other competent evidence. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2016) (Rule 56 "allows the District Court to 'consider [a] fact undisputed' if it has not been properly supported or addressed as required by Rule 56(c)." (alteration in original) (citation omitted)); Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is

---

[2] The Court granted counsel for McManus nine extensions of time due to his poor health. *See* Minute Order (Oct. 1, 2018); Minute Order (Oct. 23, 2018); Minute Order (Nov. 2, 2018); Minute Order (Dec. 3, 2018); Minute Order (Jan. 7, 2019); Minute Order (Jan. 31, 2019); Minute Order (Feb. 6, 2019); Minute Order (Feb. 14, 2019); Minute Order (Feb. 21, 2019). The Court also thrice ordered counsel to respond to Defendant's renewed motion to dismiss and for summary judgment and advised that, if McManus failed to file an opposition, "the Court may resolve the case based exclusively on Defendant's submission and may treat Defendant's evidence as uncontested." Minute Order (Feb. 6, 2019); *see also* Minute Order (Feb 21, 2019); Minute Order (Dec. 3, 2018). To date, McManus has yet to file an opposition.

This is not the first time that counsel for McManus has failed to comply with the Court's orders. In June 2018, he failed to appear for a status conference in this case. Minute Entry (June 6, 2018). The Court ordered that he "provide Plaintiff with a copy of [the Court's] Order and confer with her regarding his ability to continue handling this matter." Dkt. 31 at 1. However, he has continued as counsel of record.

entitled to it"); Local Civ. R. 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

The relevant events are as follows:

Plaintiff Sheree McManus is an African American woman born in 1955. Dkt. 33-4 at 1, 11 (Ex. A) (McManus EEO Aff.). At all times relevant to the present suit, McManus was employed as a Grants Management Specialist within the Grants Program Directorate ("GPD") of FEMA at level GS-13/8. *Id.* at 1 (Ex. A) (McManus EEO Aff.); Dkt. 33-11 at 2 (Ex. H) (McManus Resume). McManus first began working at FEMA in 1993, and, with the exception of two years, has worked at FEMA ever since. Dkt. 33-4 at 1 (Ex. A) (McManus EEO Aff.). Throughout her tenure at FEMA, McManus alleges that she was denied various management positions to which she applied because of her age and race and in retaliation for her protected EEO activity. Dkt. 18 at 10–11 (Amd. Compl. ¶¶ 83–90). Ten non-selections are the subject this lawsuit.[3] Those job announcements were posted in 2010 while Elizabeth Harman was the Assistant Administrator for GPD and the final decisionmaker for the hiring decisions. Dkt. 33 at 4, 5, 6 (Def. SUMF ¶¶ 7, 13, 20, 22).

---

[3] It is undisputed that, in 2008, McManus applied for six grants management positions but was not selected, Dkt. 33 at 3 (Def. SUMF ¶ 3), and that, in November 2009, she intended to apply for a Supervisory Grants Management Specialist position, but that position was removed before could apply and was never filled, *id.* (Def. SUMF ¶ 5). McManus has confirmed, however, that "she 'withdraws her claims to relief'" with respect to these claims, *McManus I*, 246 F. Supp. 3d at 108 n.3 (quoting Dkt. 14 at 1), and the Court previously "grant[ed] FEMA's motion for summary judgment as to any race or discrimination claims arising from her 2008–2009 non-selections," *id.* The Court will, accordingly, address only McManus's 2010 non-selection claims.

3

1. *Announcement AN343825*

On May 6, 2010, FEMA announced openings for three Supervisory Grants Management Specialist positions. *Id.* (Def. SUMF ¶ 8) (citing Dkt. 33-7 at 1 (Ex. D) (AN343825)). Applicants were allowed to apply at either the GS-13 or GS-14 level. *Id.* McManus applied only at the GS-14 level. *Id.* (Def. SUMF ¶ 9) (citing Dkt. 33-5 at 4 (Ex. B) (McManus Dep.)). A selection panel comprised of branch chiefs reviewed the applications and recommended that Harman hire two GS-13 applicants, Natalie Romanoff and Betsy Colon. *Id.* (Def. SUMF ¶¶ 10, 12) (citing Dkt. 33-3 at 1–2 (Walker Decl. ¶ 3–4, 7)). According to the declaration of Marketa Walker, the Branch Chief of the Award Administration Branch and a member of the selection panel, consistent with longstanding GPD practice, "every attempt was made to try and fill positions at the lowest grade level possible" to "save money" and to "allow employee growth within a position." Dkt. 33-3 at 2 (Walker Decl. ¶ 6). As a result, the panel recommended the selection of two applicants at the GS-13 level. *Id.* (Walker Decl. ¶ 7). Walker does not "recall interviewing or otherwise considering any applicants from the GS-14 list" because "there were qualified applicants who applied at the GS-13 level." *Id.* (Walker Decl. ¶ 8). In July 2010, Harman "relied on the recommendations of the selection panel" in making her final decision to hire Romanoff and Colon. Dkt. 33-2 at 2 (Harman Decl. ¶ 4).

2. *Announcement AN343955*

On May 10, 2010, FEMA announced openings for three non-supervisory Grants Management Specialist positions. Dkt. 33 at 4 (Def. SUMF ¶ 14) (citing Dkt. 33-8 at 1 (Ex. E) (AN343955)). Again, applicants were allowed to apply at either the GS-13 or GS-14 level, *id.*, and, again, McManus applied only at the GS-14 level, *id.* at 5 (Def. SUMF ¶ 15) (citing Dkt. 33-5 at 10 (Ex. B) (McManus Dep.)). The panel recommended two applicants from the GS-13 list,

Nicole Dubins and Rosalie Vega, and one applicant from the GS-14 list, Andrea Day. *Id.* (Def. SUMF ¶ 16) (citing Dkt. 33-3 at 3 (Walker Decl. ¶ 11)). Day is the only applicant that the panel interviewed from the GS-14 list. Dkt. 33-3 at 3 (Walker Decl. ¶ 10). Walker explains that she chose to interview Day because Day "had worked for FEMA for over seven years and had significant knowledge of GPD's day to day operations;" in addition, Walker attests that she had also "worked with [Day] previously and knew she produced a superior work product and had experience with all of GPD's systems." *Id.* (Walker Decl. ¶ 14). In contrast, Walker further explains, "McManus'[s] resume demonstrates why [she] did not identify [McManus] as an individual [she] wanted to interview." *Id.* (Walker Decl. ¶ 16). Although FEMA has provided the Court with a copy of McManus's resume, Dkt. 33-11 (Ex. H), what matters for present purposes is Walker's uncontroverted perspective. In her view:

> [McManus's] resume is disorganized, unfocused, rambling, disjointed, and extremely hard to read. Her resume reads like a task list and appears to be [McManus's] stream of consciousness about every aspect of grants management rather than a concise explanation of how she was qualified for the position. Her resume also embellishes her experience by taking credit for projects that I know other employees worked on. . . . Similarly, she contends that she prepared legal opinions on grant issues. That is not true. . . . Her resume also fails to clearly and succinctly identify her knowledge, responsibilities, or abilities in a fashion that permits the reader to evaluate her qualification and experiences.

Dkt. 33-3 at 3–4 (Walker Decl. ¶ 16). Walker denies knowing that McManus had filed an EEO complaint at the time of her recommendation, *id.* (Walker Decl. ¶ 18), and further denies that any of her decisions or recommendations "were based on any applicant's race, sex, age, or prior EEO activity," *id.* (Walker Decl. ¶ 19). In July 2010, Harman selected Dubins, Vega, and Day for the positions based on the panel's recommendations. Dkt. 33 at 5 (Def. SUMF ¶ 20) (citing Dkt. 33-2 at 2 (Harman Decl. ¶ 4)).

5

### 3. *Announcement AN343590*

On May 13, 2010, FEMA announced openings for four senior supervisory grants management specialist positions at the branch chief level. Dkt. 33 at 5 (Def. SUMF ¶ 21) (citing Dkt. 33-9 at 1 (Ex. F) (AN343590)). This time, applicants were allowed to apply at either the GS-14 or GS-15 level. *Id.* Because of the seniority of the positions, Harman did not rely on a panel to vet applicants; she interviewed candidates and made the final decision herself. *Id.* at 6 (Def. SUMF ¶ 22) (citing Dkt. 33-3 at 2 (Harman Decl. ¶ 5)). Harman selected Dana Bourne and Deborah Scott from the GS-15 list and Andrea Gordon and Vanessa Pert from the GS-14 list. Dkt. 33 at 6 (Def. SUMF ¶ 22). Harman attests that she selected Bourne and Scott because they "were experienced supervisors with significant grants management experience." Dkt. 33-3 at 2 (Harman Decl. ¶ 7). She further explains that she selected Pert and Gordon because of their clearly demonstrated supervisory and work experience. *Id.* (Harman Decl. ¶ 8) ("Ms. Pert had been section chief for nearly two years and Ms. Gordon had been section chief for a year."). In contrast, Harman attests that she chose not to interview McManus because of "her resume, which was poorly written, unfocused, and difficult to understand." *Id.* at 2 (Harman Decl. ¶ 6). Specifically, Harman explains that:

> [McManus] . . . failed to articulate her experience that qualified her for the position in a manner that was easy to understand and embellished her experience by contending that she had significant supervisory experience. However, her resume failed to demonstrate that she actually possessed that experience. . . . [S]he provided no details of this alleged supervisory experience and none of the positions listed in her resume were supervisory positions. In fact, the way her resume was written made it very difficult to determine what her previous positions were.

*Id.* Like Walker, Harman denies any knowledge of McManus's EEO complaint at the time of her decision and denies making any of her decisions based on any applicant's race, sex, age, or prior EEO activity. *Id.* at 3–4 (Harman Decl. ¶¶ 10–11).

6

In addition to the above non-selections, McManus also alleges that she was given a poor performance review in 2012 for engaging in protected EEO activity. Dkt. 18 at 11 (Amd. Compl. ¶ 89). In particular, she claims that Romanoff, an individual who was elevated over her, rated her as "proficient" instead of a "superior" in 2012 in retaliation for her EEO complaints. *Id.* at 8 (Amd. Compl. ¶ 71). McManus further alleges that, as a result, she did not receive a performance award of at least $1,500 that she had received every year prior to 2012. *Id.* (Amd. Compl. ¶ 70). According to Defendant, however:

> The overall proficient rating accurately reflects the work performed by [McManus] during the 2012 rating period. When given the opportunity during [McManus's] annual review, [McManus] failed to provide sound, reasonable, or detailed examples of superior performance and failed to submit examples or documentation of such performance. Moreover the reviewing officials had received complaints regarding the manner in which [McManus] conducted phone calls to grantees.

Dkt. 33 at 6 (Def. SUMF ¶ 27) (citing Dkt. 33-17 at 8–9 (Ex. N) (Romanoff EEO Aff. ¶¶ 21–23) and Dkt. 33-18 at 6 (Ex. O) (Gordon EEO Aff. ¶¶ 16–19)).

On September 29, 2010, McManus emailed the Office of Equal Rights ("OER") to amend her existing complaint of discrimination to add allegations regarding her 2010 non-selections. *See* Dkt. 11-6 at 7 (Final Agency Decision). On July 9, 2012, McManus initiated contact with an EEO counselor regarding her 2012 performance review. Dkt. 33-16 at 1 (Ex. M) (Final Agency Decision). She filed a formal complaint a month later, *id.* at 2 (Ex. M) (Final Agency Decision), and received an adverse decision on her retaliation claim in September 2013, *id.* at 8 (Ex. M) (Final Agency Decision). In August 2014, an administrative law judge also granted summary judgment against McManus on her non-selection claims. *See* Dkt. 11–6 at 16 (Final Agency Decision).

7

B.      **Procedural Background**

McManus filed this lawsuit in November 2014, alleging that she had been denied the ten positions to which she applied in 2010, was moved to a less desirable office space, and was given an unfavorable performance review in 2012, all because of her age and race and in retaliation for her protected EEO activity. *See generally* Dkt. 1 (Compl.). FEMA initially moved to dismiss McManus's complaint on the ground that she had failed to exhaust her administrative remedies, Dkt. 5, but withdrew that motion at oral argument, agreeing that summary judgment was the "most appropriate vehicle" to raise that defense, Dkt. 15 at 8, 27 (Apr. 18, 2016 Oral Arg. Tr.). At oral argument, counsel for McManus, with the consent of FEMA, also agreed to submit an amended complaint addressing various pleading deficiencies the Court had raised. *See id.* at 27 (April 18, 2016 Oral Arg. Tr.). After McManus failed to file an amended complaint by the agreed-upon date, the Court ordered FEMA to "respond to [her] original complaint," Minute Order (June 3, 2016), and FEMA did so by filing a motion to dismiss and for summary judgment, Dkt. 11.

FEMA's motion raised three arguments. First, FEMA argued that it was entitled to partial summary judgment because, with respect to seven of the ten positions McManus sought in 2010, McManus withdrew her age and race discrimination claims in full or in part over the course of the EEO process and, accordingly, failed to exhaust her administrative remedies. Dkt. 11 at 10–11. Second, FEMA argued that the complaint failed to allege any "factual matter" that would support a plausible inference that she was not selected for promotion in 2010 because of her age or race. *Id.* at 12–14. Finally, FEMA argued that McManus's retaliation claims failed as a matter of law because she did not allege "a causal link" between her EEO activity and her non-selections, *id.* at 14–17, and because she failed to allege a cognizable "adverse employment

8

action" with respect to her reassignment to a different office space and her "proficient" performance appraisal, *id.* 17–18. The Court granted in part and denied in part FEMA's motion. The Court denied summary judgment with respect to McManus's 2010 non-selection claims because neither party adequately addressed whether, pursuant to "Management Directive 110," McManus's oral withdrawal of her discrimination claims were binding. *McManus I*, 246 F. Supp. 3d at 111. The Court granted FEMA's motion to dismiss McManus's claims relating to her 2012 performance evaluation on the ground that she had failed to allege an "adverse employment action," but permitted McManus to amend her complaint to allege further facts relating her 2012 performance evaluation, and granted summary judgment in favor of FEMA on McManus's claims relating to her office move. *Id.* at 114–15.

In May 2017, McManus amended her complaint, adding additional allegations regarding her 2012 performance evaluation. *See* Dkt. 18 at 7–8 (Amd. Compl. ¶¶ 67–71). After the close of discovery, Defendant again moved to dismiss and for summary judgment, focusing primarily on the absence of any evidence of discriminatory or retaliatory motive. *See* Dkt. 33. That motion has been pending without an opposition since August 27, 2018. After eight extensions of time, the Court issued a final warning:

> It is . . . ORDERED that Plaintiff shall file her opposition on or before February 22, 2019. This is the Court's . . . final extension of time. The Court cautions Plaintiff that, should she again fail to file her opposition, the Court may rule on the pending motion for summary judgment, and may, as appropriate, treat Defendant's evidentiary showing as undisputed.

Minute Order (Feb. 21, 2019). To date, McManus has yet to file an opposition to Defendant's motion to dismiss and for summary judgment. The Court will, accordingly, proceed to decide the motion without her input and will treat Defendant's undisputed evidence as admitted for present purposes.

9

## II. LEGAL STANDARD

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (internal citation omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56 (quotation marks omitted).

Pursuant to Federal Rule of Civil Procedure 56, the Court may grant summary judgment only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the outcome of the litigation, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *Talavera v. Shah*, 638 F.3d 303,

308 (D.C. Cir. 2011). The moving party "bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has carried that burden, the opposing party must then come forward with declarations or other evidence showing that there is a genuine issue of material dispute for the trier of fact. *Grimes v. District of Columbia*, 794 F.3d 83, 94–95 (D.C. Cir. 2015).

### III. ANALYSIS

**A.     Discrimination Claims**

McManus alleges that she was passed over because of her age and race for ten positions to which she applied in 2010. Dkt. 18 at 10 (Amd. Compl. ¶¶ 83–86). Because McManus has failed to offer any direct evidence of discrimination, however, the burden shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. Under that framework, McManus bears the initial burden on of demonstrating (1) that she belongs to a protected class; (2) "that [s]he applied and was qualified for a job for which the employer was seeking applicants;" (3) "that, despite h[er] qualifications, [s]he was rejected;" and (4) "that, after h[er] rejection, the position remained open and the employer continued to seek applicants from persons of [his] qualifications." *Id.* at 802. The burden then shifts to her employer to offer a legitimate non-discriminatory reason for its action. *See Thompson v. Sessions*, 278 F. Supp. 3d 227, 240–41 (D.D.C. 2017). If her employer proffers a legitimate non-discriminatory reason, the Court "need not—*and should not*—decide" whether McManus "actually made out a prima facie

11

case under *McDonnell Douglas*." *Brady v. Sergeant at Arms*, 520 F.3d at 490, 494 (D.C. Cir. 2008) (emphasis in original).

At that point, the only question for the Court is whether McManus has "produced sufficient evidence for a reasonable jury to find that [her] employer's asserted non-discriminatory reason was not the actual reason and that [her] employer intentionally discriminated against the plaintiff on a prohibited basis." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008). The Court "evaluate[s] this question 'in light of the total circumstances of the case,' asking 'whether the jury could infer discrimination from the combination of (1) [McManus's] prima facie case; (2) any evidence [she] presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to [McManus]. . . or any contrary evidence that may be available to the employer.'" *Nurriddin v. Bolden*, 818 F.3d 751, 759 (D.C. Cir. 2016) (alteration in original) (quoting *Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012)). Here, Defendant has proffered legitimate non-discriminatory reasons for all ten of its hiring decisions made pursuant to AN343825, AN343955, and AN343590.

With respect to job announcement AN343825, FEMA posits that Natalie Romanoff and Betsy Colon "were selected over [McManus]" because both had applied at the GS-13 level, whereas McManus had applied as a GS-14. Dkt. 33 at 23. Defendant offers the declaration of Marketa Walker, a member of the selection panel, in support of this contention. According to Walker, FEMA made "every attempt . . . to try and fill positions at the lowest grade level possible" to "save money" and to "allow employee growth within a position." Dkt. 33-3 at 2 (Walker Decl. ¶ 6). That is why no GS-14 applicants were interviewed for the positions associated with AN343825. *Id.* (Walker Decl. ¶ 8). Moreover, Elizabeth Harman, the final

12

decisionmaker, attests that she "relied on the recommendations of the selection panel" in making her final decision to hire Romanoff and Colon. *See* Dkt. 33-2 at 2 (Harman Decl. ¶ 4).

McManus, for her part, has provided no evidence that Defendant's proffered reasons are pretextual. At most, she testified during her deposition that she believes Romanoff and Colon were unqualified for the position. *See* Dkt. 33-5 at 6–9 (Ex. B) (McManus Dep.). A disparity in qualifications, however, can only support an inference of discrimination where the plaintiff is "markedly more qualified," "substantially more qualified," or "significantly better qualified," than the successful candidate(s). *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006). Here, McManus has provided no evidence of her superior qualifications, and, because "it is the perception of the decision maker [that] is relevant," *Vatel v. Alliance of Auto Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011) (citation omitted), her own "personal opinion is inadequate by itself to create an issue for the jury," *Walker v. Johnson*, 798 F.3d 1085, 1094 (D.C. Cir. 2015); *see also Dyer v. McCormick and Schmick's Seafood Restaurants, Inc*., 264 F. Supp. 3d 208, 229 (D.D.C. 2017).

In any event, no reasonable jury could find—based on the existing record—that McManus's assumptions about Romanoff's and Colon's lack of qualifications are correct. McManus testified, for instance, that Romanoff was unqualified because she "had no background or experience in grants." Dkt. 33-5 at 6 (Ex. B) (McManus Dep.). Romanoff's resume, however, shows the opposite: At the time of her application, she was already working in GPD as a grant support specialist. *See* Dkt. 33-13 at 1 (Ex. J) (Romanoff Resume). Likewise, McManus testified that Colon was unqualified because she was a long-term temporary employee. Dkt. 33-5 at 7–9 (Ex. B) (McManus Dep.). She fails to explain, however, why that status would make

13

Colon unqualified, and, more importantly, she fails to offer any reason to believe that the panel or Harman viewed Colon's long-term temporary employee status as a drawback.

Finally, the Court notes that Walker describes AN343825 as an announcement "for two" positions, Dkt. 33-3 at 2 (Walker Decl. ¶ 5), while the announcement refers to three positions, Dkt. 33-7 at 1. Because only two selections were apparently made, one might wonder whether a third position was available but went unfilled. But, even if that was the case, Walker's declaration leaves no room—at least in the absence of any controverting evidence from McManus—to conclude that FEMA was motivated in whole or in part by McManus's age or race when it declined to offer her the third position.[4] Walker attests that she does "not recall interviewing or otherwise considering any applicants from the GS-14 list," Dkt. 33-3 at 2 (Walker Decl. ¶ 8), and, more importantly, she attests that "none of [her] decisions or recommendations were based on any applicant's race, sex, age, or prior EEO activity," *id.* at 4 (Walker Decl. ¶ 19). McManus has failed to offer any evidence that would permit a reasonable jury to doubt that testimony.

Defendant advances a similar rationale for the selection of Nicole Dubins and Rosalie Vega over McManus for the positions listed in job announcement AN343955. There, the selection panel again attempted to make recommendations from the GS-13 list, and McManus applied as a GS-14. Dkt. 33 at 5 (Def. SUMF ¶¶ 15–16). Although the panel did interview (and

---

[4] Although Title VII permits a mixed-motives discrimination claim, *see* 42 U.S.C. §§ 2000e-2(m) (prohibiting the use of "race, color, sex, or national origin" as a "motivating factor" for any "employment practice"), the Supreme Court has held that the ADEA does not, *see Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009). Accordingly, the hurdle for McManus's age discrimination claim is even higher than that for her race discrimination claim: To survive summary judgment, McManus must show that there is a genuine dispute whether FEMA's proffered reason is pretextual, and whether her "age was the 'but-for' cause" of her non-selection. *Id.* at 176 (citing *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 652–55 (2008)).

recommend for selection) one individual from the GS-14 list, Andrea Day, *id.* (Def. SUMF ¶ 16), McManus has conceded that Day's selection was not the product of age or race discrimination, *see* Dkt. 33-5 at 12 (Ex. B) (McManus Dep.). With respect to the other two selections, Walker attests that she recommended Dubins because she had "firsthand experience of her work ethic, leadership, and mastery of the grants management process," Dkt. 33-3 at 3 (Walker Decl. ¶ 12), and recommended Vega because "she had significant grants management experience as demonstrated by the eight years she worked as a [grants management specialist] with the Department of Commerce," *id.* (Walker Decl. ¶ 13). In contrast, Walker attests that she did not interview McManus because McManus's resume was "disorganized, . . . rambling, disjointed, and extremely hard to read," and because McManus's resume had "embellishe[d] her experience" and "t[ook] credit for projects" that other employees had worked on. *Id.* at 4–5 (Walker Decl. ¶ 16). McManus has not contested this characterization, nor has she provided any other evidence that Defendant's proffered reasons for her non-selection for any of the three positions advertised in AN343955 was pretextual.

That, then, leaves the four positions filled pursuant to AN343590. With respect to these positions, Harman, the final decisionmaker, explained that she did not rely on a selection panel. Rather, she personally interviewed and selected Dana Bourne and Deborah Scott from the GS-15 list and Andrea Gordon and Vanessa Pert from the GS-14 list. Dkt. 33-2 at 2–3 (Harman Decl. ¶ 5, 7, 8). Harman offered legitimate non-discriminatory reasons for all four hires: Bourne and Scott "were experienced supervisors with significant grants management experience." *Id.* at 3 (Harman Decl. ¶ 7). And Pert and Gordon both had experience as section chief. *Id.* (Harman Decl. ¶ 8). Harman also offered a legitimate non-discriminatory reason for not interviewing or selecting McManus: "[N]one of the positions listed in her resume were supervisory positions"

15

even though her resume "embellished her experience by contending that she had significant supervisory experience." *Id.* at 2 (Harman Decl. ¶ 6). In addition, like Walker, Harman concluded that McManus's resume "was poorly written, unfocused, and difficult to understand" and that, as written, it "made it very difficult to determine what her previous positions were." *Id.* McManus has provided no evidence to contest Harman's characterization of her experience or, more importantly, to dispute Harman's characterization of why she made the decision not to interview McManus.

Accordingly, the Court concludes that there is no genuine dispute that FEMA made each hiring decision based on legitimate, non-discriminatory reasons. The Court will, therefore, enter summary judgment in Defendant's favor with respect to McManus's discrimination claims as to all of the positions advertised in AN343825, AN343955, and AN343590.

**B.      Retaliation Claims**

Previously, the Court entered summary judgment in Defendant's favor on McManus's claim that FEMA had retaliated against her by moving her office. *McManus I*, 246 F. Supp. 3d at 115. As a result, only two of McManus's retaliation claims remain. She alleges that she was (1) passed over for all ten positions to which she applied in 2010 and (2) given a lower performance review in 2012 in retaliation for her protected EEO activity. Dkt. 18 at 10–11 (Amd. Compl. ¶¶ 87–90). To succeed on her claims of retaliation, McManus must establish that she engaged in protected conduct; that her employer took an adverse personnel action; and that "a causal connection" existed between the two. *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985) (citation omitted). Because McManus cannot point to any direct evidence of retaliation, the *McDonnell Douglas* burden-shifting framework discussed above also applies here. And like her discrimination claims, McManus's retaliation claims fail because she has provided no

16

evidence that FEMA's proffered non-discriminatory reasons for its 2010 hiring decisions and 2012 performance review are pretextual.

1.  *2010 Non-Selections*

The Court has already discussed McManus's non-selection for job announcements AN343825, AN343955, and AN343590, and has concluded that there is no genuine dispute that FEMA's proffered reasons were the actual reasons for the selections at issue. That conclusion also undermines McManus's retaliation claims. Defendant has proffered legitimate rationales for each of the selections at issue, and McManus has offered no evidence that would permit a reasonable jury to find that those rationales were pretextual.

McManus testified at deposition that she believed she was subject to retaliation because she perceived "a hostility in the atmosphere" and that "she could feel it in the air." Dkt. 33-5 at 13–14 (Ex. B) (McManus Dep.). That is not enough to survive summary judgment, given that (1) Harman—the decisionmaker—has attested, without contradiction, that she was unaware of McManus's EEO activity at the time of her decisions, Dkt. 33-3 at 2 (Harman Decl. ¶¶ 10–11); (2) McManus herself confirmed that her meeting with Harman on September 2, 2018—*after* she was not selected for any of the positions—was the "first time [Harman] heard about the history of what had been going on," Dkt. 33-10 at 3 (Ex. G) (McManus Dep.); and (3) Walker attested that she was also unaware that McManus "had filed an EEO complaint when [she] participated in the selections for job announcements AN343825 and AN343955, Dkt. 33-3 at 4 (Walker Decl. ¶ 18). Although a plaintiff need not provide direct evidence that her supervisor knew about her protected activity to survive a motion for summary judgment, *see McManus I*, 246 F. Supp. 3d at 116, the plaintiff must offer *some* evidence—direct or circumstantial—that would permit a

reasonable jury to find that the defendant's proffered non-discriminatory rationale was pretextual. Because McManus has failed to do so, her retaliation claims fail as a matter of law.

   2.   *2012 Performance Review*

McManus's retaliation claims based on her 2012 performance review fare no better. As a threshold matter, the claims are untimely. Under Title VII, plaintiffs are required to file suit "[w]ithin 90 days of receipt of notice of final action taken by [EEOC]." 42 U.S.C. § 2000e-16(c). Although this deadline is not a jurisdictional requirement, it is "similar to a statute of limitations." *Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006) (citation omitted). In cases in which the plaintiff elects to exhaust administrative remedies under the ADEA by filing a complaint with the EEOC, the same rule applies, and, accordingly, the action must also be brought within 90 days of the final agency action. *Price v. Bernanke*, 470 F.3d 384, 389 (D.C. Cir. 2006); *see also* 29 C.F.R. § 1614.407(a). Here, it is undisputed that McManus received the EEOC's final decision regarding her retaliation claims based on her 2012 performance review on September 11, 2013. *See* Dkt. 33-16 at 8 (Ex. M) (Final Agency Decision). As a result, she had until December 10, 2013 to file a timely action. She did not file suit until November 21, 2014—more than eleven months after the 90-day period had expired. Dkt. 1 (Compl.). Her claims are therefore time-barred.

But even if the Court were to reach the merits of these retaliation claims, Defendant is entitled to summary judgment. FEMA has, once again, offered evidence sufficient to establish a legitimate non-discriminatory rationale for rating McManus at the "proficient" as opposed to the "superior," level, for the 2012 rating period. *See* Dkt. 33 at 6 (Def. SUMF ¶ 27). As explained in an affidavit executed by the McManus's first-line supervisor, Romanoff, McManus—in fact—"performed at the proficient level . . . during this time period." Dkt. 33-17

18

at 8 (Ex. N) (Romanoff EEO Aff. ¶ 21). McManus was informed, moreover, that she could "provide documentation, narrative, or support information to explain why she should have received a Superior rating for each category," and she was asked during her performance review "to provide examples of superior performance." *Id.* (Ex. N) (Romanoff EEO Aff. ¶ 22). Notwithstanding this opportunity, McManus failed "to provide sound, reasonable, or detailed examples" during her review, and she failed to "submit any documentation" after the review took place. *Id.* McManus has not opposed Defendant's motion and, accordingly, has not contested this characterization of her job performance. Based on this record, a reasonable trier of fact could not find that McManus's "proficient" rating was the product of a retaliatory motive.

In light of the above, the Court will enter summary judgment in favor of Defendant as to McManus's retaliation claims.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion to dismiss and for summary judgment, Dkt. 33.

A separate order will issue.

/s/ Randolph D. Moss  
RANDOLPH D. MOSS  
United States District Judge

Date: March 22, 2019